**William DARNELL, Appellee,**

v.

**Col. John H. FORD, Appellant.**

**No. 89–1809.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1990.

Decided May 11, 1990.

Rehearing and Rehearing In Banc Denied June 22, 1990.

Theodore A. Bruce, Jefferson City, Mo., for appellant.

Mark T. Kempton, Sedalia, Mo., for appellee.

Before ARNOLD, Circuit Judge, HEANEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HEANEY, Senior Circuit Judge.

The Missouri State Highway Patrol (Patrol) disciplined William Darnell for withholding information regarding stolen Patrol property. Darnell brought suit claiming that a Patrol Major, John Ford, who recommended the discipline, did so because Darnell opposed Ford's candidacy for Patrol Superintendent. He contended that Ford's actions violated his First Amendment right to free speech. The jury found for Darnell and awarded him substantial damages. The district court modified the award and directed that Darnell be reinstated. When the Patrol reinstated Darnell to a position other than that of a commander of a troop, the district court reinstated the damage award in its entirety. We affirm the district court's decision with the exception of its reinstatement of the damage award. We direct that Darnell be reinstated to the position of commander of a troop.

## BACKGROUND

On April 14, 1988, in response to a rumor, Lt. Col. Fisher of the Patrol phoned Darnell to ask him if he knew anything about property missing from a construction site within Darnell's area as Captain and Troop Commander. Darnell said that he was told several weeks earlier by a low-level subcontractor that a Captain Lubker, a Patrol administrator in charge of construction, had taken an air compressor. Fisher took this information to Superintendent Howard Hoffman of the Patrol. Hoffman initiated an investigation of Lubker. Subsequently, Lubker retired with full benefits.[1]

---

1. While there is no doubt that the Patrol forced Lubker into retiring, Darnell did question whether Lubker did, in fact, commit a punishable act. Several witnesses testified that Lubker,

Turning to Darnell's failure to report Lubker's misappropriation, Ford, having been delegated the matter by Hoffman, determined that Darnell should be disciplined, relying on General Order III–1–20A of the Highway Patrol, which states that members shall "Report promptly any acts knowingly committed or permitted by members or employees that are violations of law, rule, regulation, policy or order."[2] In his decision, Ford relied on the phone conversation and an interview with Darnell in both of which Darnell admitted that he made a conscious decision not to pursue the matter because he believed that the equipment stolen was simply "junk" and that it was a matter for central administration. Ford recommended that Darnell be demoted and transferred.

Upon being informed of the Patrol's intention, Darnell asked for a board hearing under RSMo. § 43.150. His request for a formal board hearing was denied because he was not "removed" from the Patrol. Instead, the Patrol asserted that Darnell's remedy was General Order V–16–104, which permits a member of the Patrol the right to appeal to the Superintendent if he or she feels a disciplinary measure is unfounded, unjust, or unfair. Darnell met with Superintendent Hoffman. After that meeting, Hoffman decided that Darnell would be demoted from his position as Troop B Commander and transferred at his own expense.

Darnell brought the instant action. His amended complaint alleged that Ford and Hoffman acted together and in concert to deny Darnell (1) procedural due process, (2) substantive due process, and (3) the right to engage in political activity and expression.

On a motion for summary judgment, the district court held that Darnell was entitled, for purposes of procedural due process, to a board hearing. The court relied on *Hughes v. Whitmer,* 714 F.2d 1407 (8th Cir.1983).

At the same time, the district court overruled four motions in limine by Ford that sought to prohibit Darnell from (1) litigating whether Ford and Hoffman allegedly failed to follow certain rules or regulations, (2) trying to relitigate whether or not Darnell was actually guilty of the disciplinary charges, (3) presenting evidence of a wiretap generated sometime after the discipline, and (4) trying to allege that others within the Patrol were also guilty of violations for failing to report misappropriation.

At trial, Darnell asserted that both Ford[3] and Hoffman were responsible for the discipline given to Darnell and that their motive for the discipline was Darnell's opposition to Ford as Superintendent. Because no direct evidence existed showing this to be their motive, Darnell relied on circumstantial evidence to prove motive. First, Darnell and several witnesses testified to the existence of animosity between Darnell and Ford over their respective ambitions to move up in the ranks of the Patrol. Second, several members of the Patrol testified that Ford and Hoffman knew of other Patrol members who either committed violations or knew of Patrol members who had committed violations but that neither Ford nor Hoffman recommended or ordered any discipline. Third, the air compressor that Lubker allegedly misappropriated was valued at only $25.[4]

because of his position, could determine whether certain materials were salvageable or not. If the compressor was not salvageable, then Lubker did not misappropriate any property.

2. General Order III–1–20A is a two-edged sword. Ford and Hoffman justify Darnell's discipline on his failure to comply with the General Order. Darnell, however, claims that other Patrol members who violated the General Order were not disciplined, including two Lieutenants who knew of the theft. He suggests that the failure to discipline others who violated the General Order is circumstantial evidence of Ford's and Hoffman's intent: Their decision to discipline Darnell was motivated by his opposition to Ford.

3. Ford only recommended the discipline, but several members of the Patrol testified that they knew of *no* instances where discipline was recommended but not meted out by the Superintendent.

4. Darnell presented evidence from which a jury could find that Lubker himself was not even disciplined for the theft. The evidence showed that the Patrol permitted Lubker full retirement

Finally, Darnell alleged that others in the Patrol, who knew of the Lubker incident, were not disciplined because of their allegiance to Ford. Darnell's theory was that the discipline was intended to "tar" Darnell and Fisher because they were political rivals of Ford.

Both Ford's and Hoffman's theory on the merits was that they were unaware that Darnell supported Ford's opponent. Therefore, their motive could not be as Darnell alleged. They also disputed the claims of several of Darnell's witnesses, particularly those claims related to whether other violations by Patrol members went undisciplined. Furthermore, they argued that they acted in accordance with Patrol rules and that the discipline resulted solely from Darnell's failure to inform the Superintendent of the theft.[5]

At the end of the trial, the district court reversed its earlier decision on Darnell's procedural due process claim and held that the defendants were entitled to qualified immunity.[6] It also dismissed all claims against Hoffman pursuant to a motion by Darnell.

The court then submitted two counts against Ford to the jury: a substantive due process violation for "recommending" discipline and a First Amendment violation for "recommending" discipline. The court also submitted a damage form that asked the jury to determine the amount of damages for (1) lost salary, (2) lost future salary, (3) lost retirement benefits, and (4) "other damages." The jury found for Darnell on both counts and awarded $2,002.44 for lost wages, $30,000 for lost future wages, $41,-723 for lost retirement benefits, and $400,-000 for "other damages."

Following the verdict, Darnell moved that he be reinstated to the position of Troop B Commander at the rank of Captain. Ford requested a JNOV, or a new trial. He also requested that the $400,000 award for "other damages" be remitted.

The district court ordered Darnell's reinstatement to the rank of Captain. The court also reduced the award of "other damages" from $400,000 to $50,000 because that award *exceeded the limits of fair and just compensation* and vacated the award for future lost salary and retirement benefits because Darnell was reinstated. *Darnell v. Ford,* No. 88–4468–cv–c–5, Order at 9 (W.D.Mo. May 9, 1989). Finally, the district court granted Ford JNOV on the substantive due process claim. The court reasoned that this claim was not "clearly established" in the law, and therefore Ford was protected under the doctrine of qualified immunity.

The Patrol reinstated Darnell to the rank of Captain. It did not, however, make him a commander of a troop. Instead, it established a new position, Director of Research and Information Division. The Patrol provided Darnell an office next to the boiler room in the basement of the headquarters building. Darnell immediately objected on the grounds that the Patrol's actions did not comply with the district court's order. Darnell requested that the original $400,-000 award for "other damages" be reinstated. The district court reinstated the award because it believed that it had granted Ford's motion for remittitur on the expectation that Darnell would be reinstated as a Troop Commander.[7] Ford appeals.

---

benefits if he retired. He had only two more years to mandatory retirement.

5. Ford and Hoffman argued, in the alternative, that the only outside motivation for the discipline was Ford's personal, not political, dislike of Darnell.

6. The district court originally granted summary judgment in favor of Darnell on this claim. In so doing, it relied on *Hughes*. At the end of trial, however, the district court changed its course. It directed a verdict in favor of Ford on the basis of qualified immunity because Ford had relied on the bad advice of counsel.

7. There is a conflict between the district court's explanation as to why it granted Ford's motion for remittitur at the time the motion was granted and its explanation at the time the order granting the motion was vacated. At the time it granted the remittitur, the district court explained that it was because the $400,000 exceeded the limits of fair and just compensation. In its order of June 6, 1989, the district court stated:

The basis for this Court granting defendant's motion for remittitur was the belief that plaintiff was going to be reinstated as a

## DISCUSSION

### I. EVIDENCE REGARDING DARNELL'S RIGHT TO A BOARD HEARING

■ Ford raises several evidentiary questions relating to Darnell's procedural due process claim. The crux of his argument is that the district court erred when it did not permit Ford to put forward evidence showing that Darnell was not entitled to a board hearing. He argues that this determination was based on the district court's "absurd reading" of this Court's prior ruling in *Hughes v. Whitmer*, 714 F.2d 1407 (8th Cir.1983) and the district court's failure to apply *Loudermill v. Cleveland Board of Education*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Because the district court subsequently held that Darnell could not recover under his procedural due process claim,[8] the only issue here is whether Ford was unfairly prejudiced because the district court prevented Ford from presenting evidence showing that Darnell was not entitled to a board hearing.[9]

We do not agree that sufficient prejudice to warrant reversal occurred. The evidence presented at trial showed that only Hoffman, and not Ford, could order a board hearing. It also showed that Ford had no knowledge of what process the Patrol afforded Darnell, implying that this was a matter for someone else. Finally, nothing in the record on appeal indicates that the jury based its verdict on Ford's failure to give Darnell a board hearing. In sum, the exclusion of evidence showing that Darnell was not entitled to a board hearing did not give rise to substantial prejudice.

### II. ABSOLUTE IMMUNITY FOR RECOMMENDATIONS BY STATE OFFICIALS

■ Ford argues that state officials should be absolutely immune from liability for recommending that a co-worker be disciplined. He reasons that the threat of suit would greatly inhibit state officials' willingness to bring misconduct to the attention of superiors. He further reasons that the hearing process, whether with the board or with the Superintendent, prevents constitutional violations.

Whether state executive or administrative officials receive absolute immunity for their actions is controlled by *Cleavinger v. Saxner*, 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). In *Cleavinger*, the Supreme Court stated:

> [T]he Court has extended absolute immunity to certain others who perform functions closely associated with the judicial process.
>
> . . . . .
>
> The Court has said that "in general our cases have followed a 'functional' approach to immunity law." [*Harlow v. Fitzgerald*, 457 U.S. 800, 810, 102 S.Ct. 2727, 2734, 73 L.Ed.2d 396 (1982)]. "[O]ur cases clearly indicate that immunity rests on functional categories, not on the status of the defendant." *Briscoe v. LaHue*, 460 US [325, 342, 103 S.Ct.

Troop Commander, thus securing his reputation and future employability.

The position of Division Director does not carry the prestige of Troop Commander and obviously denotes a step-down from plaintiff's previous status as Troop Commander. Consequently, it has adversely affected his reputation and future employability. In light of the above, it is obvious to the Court that the factual predicate for granting defendant's motion for remittitur has not come to pass. Consequently, the portion of this Court's order vacating the jury award of $400,000 for other damages is vacated, and the jury award for "other damages" is reinstated.

*Darnell v. Ford*, No. 88–4468–cv–c–5, Order at 1 (W.D.Mo. June 6, 1989).

8. As noted above, the district court granted, before trial, summary judgment in favor of Darnell on his procedural due process claim. During trial, Ford was not permitted to put forward evidence which showed that the only process due Darnell was a meeting with the Superintendent. At the end of the trial, the district court granted summary judgment in favor of Ford because it held that Ford was entitled to qualified immunity.

9. We assume for purposes of this argument that the district court erred in its initial application of *Hughes* and *Loudermill* and that Darnell did receive the process due him.

1108, 1119, 75 L.Ed.2d 96 (1983) ]. Absolute immunity flows not from rank or title or "location within the Government," *Butz v. Economou,* 438 US [478, 513, 98 S.Ct. 2894, 2914, 57 L.Ed.2d 895 (1978) ], but from the nature of the responsibilities of the individual official. And in Butz the Court mentioned the following factors, among others, as characteristic of the judicial process and to be considered in determining absolute as contrasted with qualified immunity: (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger,* 474 U.S. at 200–02, 106 S.Ct. at 500–01.

Under a functional analysis, Ford is not entitled to absolute immunity for his decision to recommend discipline. Rather, Ford is entitled to only qualified immunity. *See id.* (members of prison discipline committee were entitled to qualified, rather than absolute, immunity) and cases cited therein. The decision to recommend discipline was not subject to the inherent protections of the adversary process.[10] Ford's decision was made in secret. He was not insulated, in any structural manner, from political influence. The right to meet with the Superintendent to discuss the discipline is not sufficient to reduce the need for private damages actions. Written precedent, or even a written decision on Ford's part, was not present to prevent constitutional violations. Finally, Ford's conduct was not inhibited by an adversary, whose duty was to protect Darnell's constitutional rights.

**10.** Ford argues that, since RSMo § 536.150 provides a remedy in state court whenever any administrative officer of the state makes a decision affecting a person, he is entitled to absolute immunity. Such an argument is illogical. It

In sum, Ford's function was not sufficiently adjudicatory to justify the defense of absolute immunity.

### III. BALANCING PATROL'S INTEREST IN DISCIPLINE AGAINST DARNELL'S INTEREST IN FREE SPEECH

■ Ford argues that Darnell's constitutional right to free speech was not violated because the Patrol's interest in disciplining a supervising officer who intentionally withholds information about possible misconduct outweighs Darnell's interest in supporting a candidate for the Superintendent position. *See Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).

We agree with Ford that the Patrol has a legitimate purpose in maintaining proper discipline and that that purpose often justifies encroachments by the government on an employee's right to free speech. *E.g., Connick v. Myers,* 461 U.S. 138, 150–51, 103 S.Ct. 1684, 1691–92, 75 L.Ed.2d 708 (1983); *Ex parte Curtis,* 106 U.S. 371, 373, 27 L.Ed. 232 (1882). In this case, however, the Patrol did not show that an injury or disruption to the workplace affecting proper discipline was or would be the result of Darnell's support for Fisher or opposition to Ford. Without such a showing, Ford cannot explain why it needed to infringe Darnell's First Amendment rights, and therefore reliance on *Pickering* is misplaced. *Connick v. Myers,* 461 U.S. at 151–52, 103 S.Ct. at 1692–93; *Bowman v. Pulaski County Special School Dist.,* 723 F.2d 640, 644–45 (8th Cir.1983).

### IV. IS A RECOMMENDATION ALONE ENOUGH?

■ Ford contends that his recommendation was not directly responsible for Darnell's discipline. He complains that the jury instructions failed to require the jury to find "but for" causation or to inform the jury that it should consider whether an

would mean that a person could challenge an action of an administrative officer in state court but would always lose on a motion for summary judgment.

intervening cause—namely, the final decision to discipline Darnell made by Hoffman —existed.

Ford failed to preserve this error at trial. Ford did not request an instruction based on *Mt. Healthy Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977), which would have required the jury to decide this issue directly. Furthermore, the record clearly reveals that "but for" Ford's recommendation, Darnell would not have been disciplined. *See Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir.1978) (causation can be established by direct personal participation in the deprivation or by participation setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional injuries on third parties). Several Patrol members testified that if a recommendation of discipline was made, the Superintendent would *always* discipline that particular Patrol member. Furthermore, the district court explicitly discredited Superintendent Hoffman's testimony that he was responsible for disciplining Darnell. We do not find the district court's credibility determination to be clearly erroneous.[11]

## V. QUALIFIED IMMUNITY

 Ford contends that the district court erred by deciding that Ford was not entitled to qualified immunity on Darnell's First Amendment claim. He reasons that the question of qualified immunity, in this case, was a question for the jury. We disagree.

In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court held that a public official who violates the constitutional rights of another may nevertheless be entitled to immunity from damages if his conduct was objectively reasonable as measured by clearly established law. Whether qualified immunity should be applied in this case depends on whether the law was clearly established at the time the action occurred.

The trial court should make this determination. *Id.* at 818, 102 S.Ct. at 2738.

Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.

. . . . .

If the law is clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known the relevant legal standard, the defense should be sustained.

*Id.* 457 U.S. at 818–19, 102 S.Ct. at 2738–39. Ford has not claimed that "extraordinary circumstances" exist or put forward any evidence that would support a claim that he neither knew nor should have known that he was not entitled to infringe upon Darnell's First Amendment rights. Accordingly, the district court correctly held that Ford was not entitled to the defense of qualified immunity.

## VI. REINSTATEMENT OF THE $400,000 DAMAGE AWARD

 Ford contends that the district court erred in granting Darnell's Rule 60(b) motion to reinstate the jury's $400,000 verdict for "other damages."

As noted above, the district court originally granted Ford's motion for a remit-

---

11. Accordingly, we need not determine whether *Mt. Healthy* dictates "but for" causation or "substantial factor" causation. *See Price Waterhouse*

*v. Hopkins,* —— U.S. ——, —— – ——, 109 S.Ct. 1775, 1795–96, 104 L.Ed.2d 268, 293–94 (1989) (White, J., concurring).

titur because it believed that the $400,000 award exceeded the limits of fair and just compensation. Later, it vacated the remittitur, thereby reinstating the $400,000 award, because it found that the Patrol had ignored the court's reinstatement order by placing Darnell in a make-work position next to the boiler room in the basement of Patrol headquarters.

We believe that the district court erred in vacating the remittitur and thereby reinstating the $400,000 award. Its reasons for granting the remittitur were unrelated to its order directing the Patrol to reinstate Darnell as a commander of a troop. When the district court had determined that the Patrol had not followed its reinstatement order, the court should have issued a new order clarifying that Darnell should have been made a commander of a troop rather than vacating the remittitur. Accordingly, we remand this matter to the district court with directions that it enter an order directing the Patrol to reinstate Darnell to the position of Troop Commander at the first available opportunity [12] and, until that time, to give Darnell all wages, rights, and benefits to which a commander of a troop is entitled.

### VII. POSITION OF SUPERINTENDENT AS A MATTER OF POLITICAL CONCERN

■ Ford asserts that Darnell's support for a candidate for the position of Superintendent of the Patrol is not protected speech. He argues that the alleged "support" for Fisher was motivated by Darnell's self-interest rather than a matter of public concern. As such, according to Ford, the district court's conclusion that, as a matter of law, the appointment of the Superintendent is a "highly politicized process" is erroneous. We disagree.

The record reveals that the Governor did not consider that the appointment was made on merit alone. Instead, he required Ford to interview with the head of the state's Republican party. In addition, Ford admitted in his testimony that the Superintendent's position was a "political appoint-

ment" and conceded that no Republican Governor had ever appointed a Democrat as Superintendent of the Patrol. To further complicate matters, several witnesses testified to the existence of political factions within the Patrol and noted that it was important that a candidate belong to the right political faction for him or her to be appointed Superintendent.

Finally, Ford argues that, regardless of the fact that Darnell's speech was a matter of public concern, because Darnell's speech was motivated by self-interest, it is not protected by the First Amendment. One's personal gain from speech does not eliminate constitutional protections from speech that is otherwise political. *Connick v. Myers*, 461 U.S. at 147, 103 S.Ct. at 1690. In light of all the evidence and the surrounding circumstances, Darnell's support for Fisher and opposition to Ford involved a public employee speaking as a citizen on a matter of public concern.

### VIII. OTHER ISSUES

Ford raises several other issues that merit only summary discussion. He claims that he was unfairly prejudiced by the variance between the amended complaint and the evidence at trial, by the variance between the verdict directed and the amended complaint, by the verdict form permitting "other damages," by the court's submission of the substantive due process claim to the jury, and by the admission of evidence that Fisher and another officer of the Patrol were rumored to have tapped Ford's phone. After a careful examination of the record, we find that these claims are without merit.

### CONCLUSION

We affirm the decision of the district court in all regards with the exception of the reinstatement of damages. We remand this matter to the district court with directions that it specifically order the Patrol to reinstate Darnell to the position of Troop

---

**12.** We do not think that an existing troop com- mander should be demoted.