Dr. David ZAR, Appellant,

v.

The SOUTH DAKOTA BOARD OF EXAMINERS OF PSYCHOLOGISTS; Rosemarie Reardon, W. Vail Williams, Kay Assam, Val Farmer, Thomas Jackson, Eugene P. Engen, S. Richard Gunn, and Donald J. Taylor, as members of the South Dakota Board of Examiners of Psychologists and individually; Paula S. Knutson, individually and in her official capacity; Charles Dorothy, individually and in his official capacity; Craig Eichstadt and Sherri L. Sundem Wald, individually and in their capacity as Assistant Attorney Generals of the State of South Dakota; and John Does, "A" through "Z" whose identities are unknown jointly and severally, Appellees.

No. 91–3517.

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1992.

Decided Oct. 9, 1992.

---

Robert L. Morris, Belle Fourche, S.D., argued (Terence R. Quinn, Belle Fourche, S.D., and Jean Massa, Winner, S.D., on brief), for appellant.

James L. Hoy, Sioux Falls, S.D., argued, for appellees Reardon, Williams and Gunn.

Barbara Anderson Lewis, Sioux Falls, S.D., argued for appellee Charles Dorothy.

Eric N. Rasmussen, Brookings, S.D., argued (Richard J. Helsper, on brief), for all other appellees.

Wally Eklund, Gregory, S.D., appeared on all briefs.

Before BEAM, Circuit Judge, HENLEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

HANSEN, Circuit Judge.

Dr. David Zar appeals from the district court's [1] decision denying his motion to compel production of documents, its decision to grant summary judgment in favor of the defendants on all of his federal civil rights claims under 42 U.S.C. §§ 1981, 1983, and 1985, and its decision to abstain from consideration of injunctive relief. We affirm.

I. Background

Dr. Zar is a psychologist in South Dakota. In April of 1983, the South Dakota Board of Examiners of Psychologists (the Board) hired attorney Charles Dorothy to investigate complaints made against Dr. Zar. On September 12, 1983, Dorothy presented the results of his initial investigation at an informal hearing before the Board attended by Dr. Zar. Dr. Zar denied all of the allegations made against him. The members of the Board at that time were Rosemarie Reardon, W. Vail Williams, Val Farmer, and Kay Assam.

On September 22, 1983, the Board sent Dr. Zar a notice of a formal hearing regarding the alleged violations by him of the ethical principles of psychologists and regarding the allegations that he made false statements. On October 18, 1983, Dr. Zar sought and obtained a "writ of prohibition" in state court to restrain the Board from further action. After an evidentiary hearing on February 16, 1984, the state court denied the Board's motion to quash and held that the writ was still in effect.

In March of 1984, the Board contacted South Dakota Assistant Attorney General Craig Eichstadt. On behalf of the Board, Eichstadt appealed the decision denying the Board's motion to quash to the Supreme Court of South Dakota. Eichstadt contacted the county attorney requesting that he prosecute Dr. Zar for certain matters alleged by the Board and offered both his and Board Attorney Dorothy's cooperation. The county attorney did not prosecute Dr. Zar. In October of 1985, the Supreme Court of South Dakota reversed the trial court's grant of the writ of prohibition and allowed the Board's inquiry to continue. *Zar v. South Dakota Bd. of Examiners of Psychologists*, 376 N.W.2d 54 (S.D.1985) (*Zar I*). After the reversal, Dorothy amended the notice of formal action to include new allegations and to exclude any allegations that preceded February of 1982, the date the relevant code of ethics was adopted. Dr. Zar was also subject to discipline if he had lied about the excluded alleged conduct during the September 12, 1983 informal hearing.

Before January 8, 1986, Board Attorney Dorothy inquired into Dr. Zar's status with the Immigration and Naturalization Service (INS) upon the request of the Board's Administrative Assistant Paula Knutson. Assistant Attorney General Eichstadt sent letters to the INS concerning the administrative proceedings against Dr. Zar and requested that the INS inform him of any action the INS might take against Dr. Zar. Eichstadt learned that Dr. Zar could be deported if he was convicted of a felony. Eichstadt may have conveyed this fact to Dorothy and Sherri Wald. Wald was both an Assistant Attorney General for South Dakota and the Director of the South Dakota Medicaid Fraud Control Unit (MFCU).

In June and July of 1986, the newly appointed hearing examiner conducted seven days of evidentiary hearings regarding Dr. Zar's license. Both sides presented evidence and witnesses and had the opportunity to cross-examine witnesses at the

---

**1.** The Honorable John B. Jones, Chief Judge, United States District Court for the District of South Dakota.

hearings. The hearing officer issued a decision the following October. After additional hearings, the examiner, on January 5, 1987, filed findings of facts, conclusions of law, and a recommendation to the Board that Dr. Zar's license be revoked. Dr. Zar's counsel sent a letter to Board Attorney Dorothy on January 13, 1987, requesting permission to file additional briefs and to present oral arguments because four of the five Board members had been appointed after the initial, informal hearing on September 12, 1983, and were not familiar with the case. On January 1, 1987, the Board consisted of Tom Jackson, Eugene Engen, S. Richard Gunn, Donald Taylor, and Kay Assam. Only Kay Assam was a member of the original Board. On January 14, 1987, Dorothy sent the letter from Dr. Zar's attorney to the Board's Administrative Assistant, Knutson. The individual Board members did not receive copies of the letter. Upon Dorothy's advice, the new Board members did not familiarize themselves with the specifics of Zar's case before voting. On January 16, 1987, the Board met by teleconference. On January 26, 1987, the Board formally adopted the final recommendation of the hearing officer without review of the record or the examiner's report. On appeal of the Board's action, its decision was set aside for lack of due process under state law and for failure to follow proper state administrative procedures, and the case was remanded to the Board for further proceedings. *In the Matter of Dr. Zar*, 434 N.W.2d 598 (S.D. 1989) (*Zar II*).

During that appeal process, several other events occurred. In the fall of 1986, the South Dakota Medicaid Fraud Control Unit (MFCU) was contacted by the Office of Inspector General in Denver, Colorado, regarding some allegations against Dr. Zar concerning Colorado Medicaid. On March 6, 1987, Assistant Attorney General Eichstadt sent an update of Dr. Zar's case to the INS. On March 23, 1987, the INS ceased the deportation proceedings and closed the case. In 1987, Director Wald and the MFCU investigated the records of certain Title XIX patients of Dr. Zar's. On June 1, 1988, Wald notified Dr. Zar of the intent of the South Dakota MFCU to file criminal charges against him for alleged false medicaid claims. A trial court ruling issued in June of 1988 in another case had held that the MFCU was precluded from criminal prosecution of medicaid false claims if those false claims were based upon violations of operating manuals rather than administrative rule violations. Based upon this decision, the MFCU decided not to pursue the false claim charges against Dr. Zar. Wald did not inform Dr. Zar of the decision not to pursue the false claim violations and continued to request documentation of Dr. Zar's billings.

Four months after the state supreme court's decision in *Zar II*, Wald acting as an Assistant Attorney General filed criminal charges in Hughes County, South Dakota, against Dr. Zar for offering fraudulent evidence and for falsifying evidence. Dr. Zar successfully moved for a change of venue. Wald then amended the complaint to include only the fraudulent evidence counts. Wald's motion for reconsideration of the change of venue was granted, but the charges were dismissed for lack of probable cause.

Dr. Zar then filed this civil rights action against the Board, the individual members of the Board, Knutson, Dorothy, Eichstadt, and Wald on January 19, 1990. The district court dismissed the case on October 1, 1991. Dr. Zar appeals and raises several issues.

## II. Motion to Compel

During the course of discovery below, Dr. Zar moved to compel the production of certain listed documents. The district court reviewed each of the documents *in camera* and determined that most of the documents in question were protected either by the attorney-client privilege or by the work product doctrine. As to some of the protected documents, the appeal is now moot because Dr. Zar has those documents in his possession. With respect to the remaining documents in question, we find that the court did not abuse its discretion in determining that they were protected by

either the attorney-client privilege or the work product doctrine.

## III. Summary Judgment Motions

We review the district court's grant of summary judgment under the same standard as applied by the district court. *Rice v. Rice*, 951 F.2d 942, 944 (8th Cir.1991) (citation omitted). The district court should be affirmed if, viewing the evidence in the light most favorable to the non-moving party, the full record discloses that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.* (citing Fed.R.Civ.P. 56(c)).

### A. Section 1983 Claims

■ Dr. Zar brought claims pursuant to 42 U.S.C. § 1983 against each of the defendants in both their individual and official capacities. To the extent that the individual defendants were sued in their official capacities and that the Board itself was sued, the defendants are not "persons" within the meaning of § 1983. *Hafer v. Melo*, — U.S. —, — – —, 112 S.Ct. 358, 362–63, 116 L.Ed.2d 301 (1991). Summary judgment in favor of the individual defendants sued in their official capacities and the defendant Board was appropriate.

■ The individual defendants were named in their individual capacity as well, however. To state such a claim under 42 U.S.C. § 1983, a plaintiff must allege facts sufficient to indicate that the named individual defendants, acting under the color of state law, violated the plaintiff's constitutional rights. *See Hafer*, — U.S. at —, 112 S.Ct. at 363.

#### 1. Members of the Board and Administrative Assistant Knutson

Dr. Zar has sued the individual members of the Board for allegedly violating Dr. Zar's federal due process rights in their decision to revoke his license taken in January of 1987. At that time, the defendants

**2.** These defendants asserted in their briefs that Dr. Zar has abandoned any claim against them

Rosemarie Reardon, W. Vail Williams, and Val Farmer were no longer members of the Board, and therefore, summary judgment was appropriate for them.[2] The remaining Board members argue that they are protected under either absolute or qualified immunity. The Board's Administrative Assistant, Knutson, argues that she is protected under qualified immunity.

■ Absolute immunity protects judges from liability for acts taken in the exercise of judicial functions. *Butz v. Economou*, 438 U.S. 478, 508–09, 98 S.Ct. 2894, 2911–12, 57 L.Ed.2d 895 (1978). The Supreme Court has held that "persons subject to [the restraints in the Administrative Procedure Act] and performing adjudicatory functions within a federal agency are entitled to absolute immunity from damages liability for their judicial acts." *Id.* at 514, 98 S.Ct. at 2915. The parties dispute whether absolute or qualified immunity applies to the South Dakota Board of Examiners of Psychologists. Although it appears likely that the Board is absolutely immune, *see, e.g., Darnell v. Ford*, 903 F.2d 556, 561 (8th Cir.1990); *Kwoun v. Southeast Mo. Professional Standards Review Org.*, 811 F.2d 401, 407–08 (8th Cir.1987), *cert. denied*, 486 U.S. 1022, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988); *Childs v. Reynoldson*, 777 F.2d 1305, 1306 (8th Cir.1985), we need not decide that question because the Board and Knutson are immune under the standard of qualified immunity.

Qualified immunity precludes liability of an official for constitutional violations if the conduct " 'was objectively reasonable as measured by clearly established law.' " *Powell v. Basham*, 921 F.2d 165, 167 (8th Cir.1990) (quoting *Darnell*, 903 F.2d at 562). "A necessary concomitant to the determination of whether the constitutional right asserted by plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff asserted a violation of a constitutional right at all." *Siegert v. Gilley*, — U.S. —, —, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).

and Dr. Zar's reply brief did not refute this point.

Dr. Zar contends that the Board's actions of failing to follow state administrative law were not protected by qualified immunity. Dr. Zar is correct that the Board failed to follow state administrative law. *See Zar II*, 434 N.W.2d 598. That assertion alone, however, is not sufficient to defeat the qualified immunity of the members of the Board and of Knutson. This issue was recently discussed in *Bartlett v. Fisher*, 972 F.2d 911 (8th Cir.1992).

In *Davis v. Scherer*, 468 U.S. 183 [104 S.Ct. 3012, 82 L.Ed.2d 139] (1984), the Supreme Court reversed a damage award in favor of an employee of the Florida Highway Patrol who claimed that his discharge deprived him of his procedural due process. In sustaining the qualified immunity defense, the Court specifically held:

> Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some [state] statutory or administrative provision.

468 U.S. at 194 [104 S.Ct. at 3019]. Thus, defendant's alleged violations of [state] regulations are *irrelevant* to the qualified immunity question before us, except insofar as a violation might reflect a deprivation of procedural due process as defined by federal law.

*Bartlett*, 972 F.2d at 915 (citations omitted). Therefore, Dr. Zar's argument that the Board members and Knutson are not entitled to qualified immunity only prevails if their conduct was not objectively reasonable but was a violation of federal due process.

■■■ A deprivation by state action of a constitutionally protected interest in life, liberty, or property is not a violation of federal procedural due process and is not actionable under § 1983 "unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). A state provided post-deprivation remedy is sufficient when the deprivation was unpredictable, when a pre-deprivation process was impossible, and where the conduct of the state actors was unauthorized. *Id.* at

136–39, 110 S.Ct. at 989–91 (discussing *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). In this case, the state had an appropriate statutory procedure that allowed a party to file briefs and present oral argument in a contested case when a majority of the agency decision-makers had not familiarized themselves with the record. *See* S.D. Codified Laws Ann. § 1-26-24. Board Administrative Assistant Knutson failed to timely notify the Board of Dr. Zar's request to invoke that procedure, and the Board failed to implement the procedure. The failures by the Board and Knutson were unpredictable and unauthorized and therefore impossible to prevent. The immediate review and reversal of the Board's action provided an adequate state remedy. Because an adequate post-deprivation remedy existed, no actionable federal due process violation occurred.

■■■ Dr. Zar next argues that Knutson is not protected by qualified immunity for her request that the Board's attorney, Dorothy, inquire into Dr. Zar's status with the INS because that action was taken in retaliation against Dr. Zar for seeking a writ of prohibition in the state courts for the initial Board proceedings in 1983. A person's constitutional right of access to the courts cannot be impaired by threats or harassment in retaliation for filing lawsuits. *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1427–28 (8th Cir. 1986). On the motion for summary judgment, however, Dr. Zar presented no evidence that the request was in retaliation for his legal activities other than an inference from the fact that the request was made at a point in time after Dr. Zar sought relief in the state courts in 1983. The inquiry to the INS, however, was in 1986, after the state supreme court found in the Board's favor in *Zar I*, 376 N.W.2d 54 (S.D.1985). Knutson's request did not violate any constitutional right of Dr. Zar. Summary judgment on these claims against the Board members and Knutson was appropriate.

### 2. Wald, Eichstadt, and Dorothy

 Assistant Attorneys General Wald and Eichstadt, and Board Attorney Dorothy each claim absolute immunity for their prosecutorial roles. An "official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed,* — U.S. —, —, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991) (citation omitted). "[P]rosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Id.* (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976)). This immunity applies even to an agency attorney performing the same prosecutorial function within the administrative hearing process. *Butz,* 438 U.S. at 516–17, 98 S.Ct. at 2915–16.

 Wald's actions of filing criminal charges against Dr. Zar, amending the criminal complaint, and filing a motion for reconsideration of the decision to change venue are "intimately associated with the judicial phase of the criminal process" and are afforded absolute immunity. Dr. Zar also asserts, however, that Wald is liable under § 1983 for her actions in investigating him. The Supreme Court has expressly reserved the question of whether a prosecutor's role as an investigator rather than as an advocate falls within absolute immunity or qualified immunity. *Imbler,* 424 U.S. at 430–31, 96 S.Ct. at 994–95. This court has stated that:

> while some of a prosecuting attorney's preliminary investigative work may be analogous to a police detective's investigation, and should therefore be only qualifiedly immune, investigation necessary to the prosecutor's decision to initiate criminal proceedings is within the quasi-judicial aspect of the prosecutor's

job and therefore is absolutely immune from a civil suit for money damages. *Williams v. Hartje,* 827 F.2d 1203, 1210 (8th Cir.1987) (citation omitted). The investigation by Wald was initiated only after the MFCU had received complaints regarding Dr. Zar's Medicaid billings from the Office of Inspector General in Denver, Colorado. The investigation of Dr. Zar pertained to his Medicaid billings. We find that the investigation that was performed by Wald "was essential to the ensuing decision whether to prosecute," *see id.,* and therefore, she is entitled to absolute immunity.

 Dorothy's actions of presenting evidence at the administrative hearings, of filing and amending the notice of formal action, and of pursuing the appeal of the reversal of the Board's decision are also protected by absolute immunity. *See Butz,* 438 U.S. at 516–17, 98 S.Ct. at 2915–16. Dorothy's advice to the new Board members that they need not familiarize themselves with the specifics of Zar's case before voting is subject, if at all, only to qualified immunity. *See Burns,* — U.S. at — – —, 111 S.Ct. at 1942–45 (prosecutor who gave legal advice to police in their investigation was only entitled to qualified immunity). However, as discussed above with respect to the Board, Dorothy's actions are protected by qualified immunity because the state's adequate post-deprivation remedy precludes any actionable federal due process claim.

 Finally, Dr. Zar argues that Eichstadt and Dorothy's actions in contacting the INS and the county attorney are actionable under § 1983. Although Eichstadt and Dorothy's contacts with the INS and the county attorney were within the scope of their duties, the conduct is not sufficiently integral to the judicial process to warrant absolute immunity. Dr. Zar argues that their contacts were in retaliation against him for seeking a writ of prohibition in the state courts for the initial Board proceedings.[3] As discussed above with re-

---

**3.** Dr. Zar asserts that Eichstadt's contact with the county attorney violated the writ of prohibition then in effect. The writ, however, only restrained the Board from continuing the ad-

ministrative disciplinary hearing. *Zar I,* 376 N.W.2d at 55. The writ did not address the actions taken by Eichstadt.

spect to Knutson, Dr. Zar presented no evidence that the contacts were made in retaliation for his legal activities other than the fact that the contacts were made at a point in time after Dr. Zar sought relief in the state courts. The undisputed evidence only indicates that the contact with the INS was made at the request of Knutson in 1986 after the state supreme court rendered a decision favorable to the Board. Eichstadt and Dorothy are entitled to qualified immunity for their contacts with the INS and the county attorney because such conduct did not violate any constitutional right of Dr. Zar and was objectively reasonable. We agree with the district court's grant of summary judgment on these claims.

### B. Section 1981 Claims

 Section 1981 prohibits purposeful racial discrimination, which includes discrimination solely because of ancestry or ethnic characteristics. *St. Francis College v. Al–Khazraji*, 481 U.S. 604, 613, 107 S.Ct. 2022, 2028, 95 L.Ed.2d 582 (1987). If an individual is "subjected to intentional discrimination based on the fact that he was born an Arab, rather than the place or nation of his origin," then he has a case under § 1981. *Id.* While Dr. Zar correctly recites the law, he bases his claim only on the fact that he is Iranian. At oral argument before this court, Dr. Zar's counsel repeated this position, and when asked whether Dr. Zar was an Arab, he responded "I can't tell you, your Honor." This claim of discrimination based upon national origin is insufficient to state a § 1981 claim. We affirm the district court's grant of summary judgment on the § 1981 claims.

### C. Section 1985 Claims

Dr. Zar also alleges that defendants conspired against him in violation of 42 U.S.C. § 1985. The alleged conspiracy involves the same actions as alleged in the § 1983 and § 1981 claims. For the same reasons we found those claims precluded above, we find this conspiracy claim to be likewise precluded. We affirm the district court's

grant of summary judgment on the conspiracy claims.

### IV. Abstention

The district court abstained from granting injunctive relief because of the state agency proceeding based on the doctrine first announced in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Although there were no active agency proceedings with respect to Dr. Zar, the administrative case has not been dismissed nor the case closed. We find no error in the district court's decision to abstain.

### V. Conclusion

Accordingly, we affirm the judgment of the district court.