# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3828

_____

| | | |
|---|---|---|
| Joseph Washington, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Normandy Fire Protection District, By | * | |
| and Through District and By and | * | Appeal from the United States |
| Through its Board of Directors, to wit: | * | District Court for the |
| Brian G. Quinlisk; Robert J. Lee, Sr.; | * | Eastern District of Missouri. |
| Roy W. Kessler, Individually and in | * | |
| Their Official Capacities, | * | |
| | * | |
| Defendants/Appellants, | * | |
| | * | |
| John Irwin, Individually and in His | * | |
| Official Capacity as Shop Steward for | * | |
| Local 2665; Ronald Fritz; Dale | * | |
| Dillingham; Danny Newberry, | * | |
| Individually and in Their Official | * | |
| Capacity as the Grievance Committee | * | |
| for the Normandy Shop of Local 2665; | * | |
| Anthony Glover, | * | |
| | * | |
| Defendants. | * | |

_____

Submitted: May 16, 2001

Filed: November 5, 2001

_____

Before WOLLMAN, Chief Judge, HANSEN, Circuit Judge, and BARNES,[1] District Judge.

_____

WOLLMAN, Chief Judge.

In this civil rights action, Brian G. Quinlisk, Roy W. Kessler, and Robert J. Lee (collectively, the directors) appeal from the district court's denial of their motion for summary judgment based on qualified immunity. We affirm in part and reverse in part.

**I.**

Prior to his termination, plaintiff, Joseph Washington, an African-American, served as the Assistant Chief of the Normandy Fire Protection District (District) in St. Louis County, Missouri. He had been employed by the District for twenty-five years.

On March 26, 1999, approximately ten days prior to an election for one of three seats on the District's Board of Directors (Board), Washington appeared on a local radio show in his capacity as senior advisor to an organization known as "FLAME," the Firefighter's League for the Advancement of Minority Employees. The purpose of Washington's appearance was to support a candidate for the Board. Such political activity is not prohibited by the District's policies. During the program, Washington expressed concern about deficiencies in the District's willingness to respond to the needs and concerns of the primarily African-American community it serves. To highlight these concerns, Washington described an incident in which an unidentified white firefighter refused to follow standard operating guidelines in fighting a fire

---

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas, sitting by designation.

because he was unwilling to "climb over fences in Pinelawn through debris, trash, garbage and whatever else to get to a back door to push a fire out and save someone's home." Washington also opined that "You have a better chance of getting on at Normandy Fire Protection District's fire force if you stay in St. Charles County and you are white, than you would if you stayed in a community and you were a black person and paid taxes. It is just a fact of life."

Immediately after the radio broadcast, the shop steward for Local 2665 of the Normandy District submitted a grievance to the District's grievance committee, alleging that Washington's on-the-air comments created a "hostile environment" for the District's white employees. The District Chief denied the grievance as meritless, concluding that Washington's comments were the expression of his personal opinion during a political interview. The Board later held a hearing on the issue, at which Washington was not present. Three days later, on May 8, 1999, after meeting with Washington in closed session, the Board demoted Washington from the rank of Assistant Chief to Private, with directors Kessler and Quinlisk voting "aye," and Lee voting "no."

Following his demotion, Washington took sick leave and never returned to work at the District. On June 9, 1999, Washington was involved in an argument and an alleged altercation with Anthony Glover, a former member of the Board. That same day, the Board ordered Washington to appear at a June 12 special meeting and to present at that time "a Doctor's statement, or medical record containing diagnosis of any current medical condition justifying sick leave." The notice further provided that Washington's failure to appear and to produce the requested records would be treated by the Board as a verification of Washington's decision to resign his employment.

Washington appeared at the meeting and informed the Board that he had been unable to obtain appropriate medical documentation within the three days provided.

Washington refused to discuss the altercation he had had with Glover. After the meeting, the Board terminated Washington's employment with the District.

Washington filed suit against the District and against the directors in their individual capacities, alleging violations of 42 U.S.C. §§ 1983, 1984, and 1985 and the intentional infliction of emotional distress. Washington also alleged claims under Title VII of the Civil Rights Act, as amended 42 U.S.C. § 2000(e) et seq., and the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010 et seq., against the District and against the directors in their official capacities. Washington's claims rest primarily on his allegation that he was demoted and subsequently terminated from his position with the District for exercising his First Amendment right to free speech.

Following the district court's denial of their motion for summary judgment on grounds of qualified immunity, the directors filed this appeal, contending that Washington's speech was so disruptive that reasonable public officials would not have concluded that the adverse action taken violated his rights under the First Amendment.

## II.

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining if summary judgment is appropriate, the facts must be examined in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "A district court's denial of a motion for summary judgment based on qualified immunity is immediately appealable." Sexton v. Martin, 210 F.3d 905, 909 (8th Cir. 2000) (citation omitted). We review the district court's denial of summary judgment de novo. Id.

-4-

The determination of whether a state actor is entitled to the protection of qualified immunity is a two-step process. The initial question is whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right." Saucier v. Katz, 531 U.S. 991, ___, 121 S. Ct. 2151, 2156 (2001). The parties do not dispute that Washington has alleged that the directors' conduct violated his First Amendment right to speech. The next inquiry, then, is to determine if the right was clearly established. Id. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "This court has . . . taken a broad view of what constitutes 'clearly established law' for the purposes of a qualified immunity inquiry . . . ." Sexton, 210 F.3d at 909 (quoting Boswell v. Sherburne County, 849 F.2d 1117, 1121 (8th Cir. 1988)).

Whether Washington's First Amendment rights were violated depends upon whether his comments during the radio interview constituted "speech on a matter of public concern." Sexton, 210 F.3d at 910 (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)). Because the directors have conceded for the purposes of their summary judgment motion that Washington's remarks touched on matters of public concern, we turn to the second step of the free-speech inquiry, which "involves balancing the employee's right to free speech against the interests of the public employer." Sexton, 210 F.3d at 910 (citing Pickering v. Board of Educ., 391 U.S. 563, 568 (1968)). In applying this test, we balance the interests of Washington as a citizen "in commenting upon matters of public concern [against] the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Sexton, 210 F.3d at 911 (quoting Shands, 993 F.2d at 1342).

The Pickering balancing test is applicable, however, only if it is first established that the speech in question created a disruption in the workplace. Sexton, 210 F.3d at 911. See also Gordon v. City of Kansas City, MO, 241 F.3d 997, 1003

-5-

(8th Cir. 2001); Hall v. Mo. Highway and Transp. Comm'n, 235 F.3d 1065, 1068 (8th Cir. 2000); Belk v. City of Eldon, 228 F.3d 872, 881 (8th Cir. 2000); Burnham v. Ianni, 119 F.3d 668, 678 (8th Cir. 1997) (en banc); Kincade v. City of Blue Springs, Mo., 64 F.3d 389, 398-99 (8th Cir. 1995); Grantham v. Trickey, 21 F.3d 289, 293 (8th Cir. 1993); Darnell v. Ford, 903 F.2d 556, 561 (8th Cir. 1990). As indicated above, the Chief of the Normandy Fire Protection District dismissed the initial grievance against Washington for lack of merit inasmuch as Washington's comments constituted the expression of his personal opinion during a political interview. The only evidence presented by the directors that suggests disruption is the grievance filed by the grievance committee, which we conclude is insufficient to establish the existence of actual disruption in the workplace.

The directors contend that no showing of actual disruption is necessary, pointing to our statement that the potential for disruption is accorded particular weight "[w]hen lives may be at stake in a fire [and] an *esprit de corps* is essential to the success of the joint endeavor." Shands, 993 F.2d at 1344-45 (quoting Janusaitis v. Middlebury Volunteer Fire Dept., 607 F.2d 17, 26 (2d Cir. 1979)). True enough, but we went on in Shands to point out that the fire chief in that case reasonably believed that the speech in question had led or would lead to disruption within the department, a showing that is absent in this case. More pertinent to the case before us is our statement in Sexton that a defendant must demonstrate with "specificity that the speech created disharmony in the workplace, impeded the plaintiff['s] ability to perform [his] duties, or impaired working relationships with other employees" before a court may continue on its qualified immunity inquiry. Sexton, 210 F.3d at 913. In the absence of such a showing, Washington's speech may not be punished. Id. Because the directors' showing of actual or potential disruption is insufficient to trigger the Pickering balancing test, their claim of qualified immunity fails.

-6-

## III.

Finally, we address the question whether the district court erred in denying Lee's motion for summary judgment on Washington's claims related to his demotion from Assistant Chief to Private. The record reflects that Lee voted against the demotion. We accordingly conclude that the district court erred in denying defendant Lee's motion for summary judgment on the issue of his liability for Washington's demotion.

The judgment is affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.