# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3073

_____

| | | |
|---|---|---|
| Joseph Washington, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Normandy Fire Protection District, By | * | |
| and Through District, and By and | * | |
| Through its Board of Directors, | * | Appeal from the United States |
| To Wit:  Brian G. Quinlisk; Robert J. | * | District Court for the |
| Lee, Sr.; Roy W. Kessler, individually | * | Eastern District of Missouri. |
| and in their official capacities; John | * | |
| Irwin, individually and his official | * | |
| capacity as Shop Steward for Local | * | |
| 2665; Ronald Fritz; Dale Dillingham; | * | |
| Danny Newberry, individually and in | * | |
| their official capacity as the Grievance | * | |
| Committee for the Normandy Shop of | * | |
| Local 2665, | * | |
| | * | |
| Defendants/Appellees, | * | |
| | * | |
| Anthony Glover, | * | |
| | * | |
| Defendant. | * | |

_____

Submitted:  April 14, 2003

Filed:  May 2, 2003

_____

Before WOLLMAN, FAGG, and RILEY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

In this civil rights action, Joseph Washington alleges that his demotion and subsequent termination from the Normandy Fire Protection District violated his First Amendment right to free speech. A jury found against Washington, and he appeals, arguing that the district court[1] erred by submitting a "business judgment" instruction to the jury, by excluding the testimony of three of his witnesses, and by granting a motion to dismiss at the pre-trial motions hearing. Washington also contends that the jury instructions, as a whole, misstated the law on the First Amendment. We affirm.

## I. Background

This case is before us for the second time. In our prior opinion, Washington v. Normandy Fire Prot. Dist., 272 F.3d 522 (8th Cir. 2001), we set forth the relevant facts, which we summarize below.

Prior to his demotion, Washington, an African-American, served as the assistant chief and public relations officer of the Normandy Fire Protection District (District). On March 26, 1999, shortly before an election for one of the three seats on the District's Board of Directors (Board), Washington appeared on a local radio show to support a candidate for the Board. During the program, Washington expressed his concerns regarding the District's willingness to respond to the needs of the primarily African-American community it serves. To highlight these concerns, Washington described an incident in which an unidentified white firefighter refused

_____

[1]The Honorable Mary Ann L. Medler, United States Magistrate Judge for the Eastern District of Missouri, presiding by consent of the parties pursuant to 28 U.S.C. § 636(c).

to follow standard operating guidelines in fighting a fire because he was unwilling "to climb over the fences in Pinelawn through debris, trash, garbage, and whatever else to get to a back door to push a fire out and save someone's home." Washington also opined that "[y]ou have a better chance of getting on at Normandy Fire Protection Districts [sic] fire force if you stay in St. Charles County and you are white, then you would if you stayed in a community and you were a black person and paid taxes."

After the broadcast, firefighters Ronald Fritz and Michael Chapman submitted a grievance to the District's grievance committee, alleging that Washington's public comments had caused "a hostel [sic] and threatening environment for all union and non-black firefighters and paramedics." Shop Steward John Irwin accepted the grievance from the committee and presented it to the District's chief, who denied the grievance. The grievance committee then requested that the Board hear the grievance. After holding hearings, the Board demoted Washington from the rank of assistant chief to private and notified him of its decision by letter dated May 10, 1999. After his demotion, Washington took sick leave and never returned to work.

By letter dated June 9, 1999, the Board directed Washington to appear for a special meeting on June 12, 1999, "to present a Doctor's statement, or medical record containing diagnosis of any current medical condition justifying sick leave." Washington appeared and informed the Board that he had been unable to obtain the appropriate medical documentation in the time afforded. The Board then attempted to question Washington about an alleged altercation that had occurred on June 7, 1999, with Anthony Glover, a former member of the Board. Washington refused to discuss the matter. After the meeting, the Board terminated Washington's employment with the District.

Washington filed suit against the District, members of the Board (the directors), the firefighters who were involved in the grievance process (the firefighter

defendants), and Glover, alleging violations of 42 U.S.C. §§ 1983, 1985, and 1986, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981a, and the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010 et seq. Washington also alleged intentional infliction of emotional distress. The district court denied the directors' motion for summary judgment based on qualified immunity. We agreed that the directors were not entitled to qualified immunity, but concluded that the district court erred by denying director Lee's motion for summary judgment on the issue of his liability for Washington's demotion. Washington, 272 F.3d at 527. On remand, the district court granted Glover's motion for summary judgment and the firefighter defendants' motion to dismiss. Washington's intentional infliction of emotional distress claim was also dismissed. The case then proceeded to trial, and the jury found in favor of the defendants on all counts.

## II. Analysis

### A. Instructional Errors

Washington first contends that the district court erred by submitting a "business judgment" instruction to the jury. Instruction 13 provided as follows: "You may not return a verdict for plaintiff just because you might disagree with defendants' decision or believe it to be harsh or unreasonable." Washington argues that this instruction "permitted the jury to conclude that [his] termination was permissible under the law, even if the termination violated the First Amendment to the United States Constitution." Washington is also apparently challenging Instructions 6 and 7, which set forth the law governing his First Amendment claims. Although he did not specifically object to these instructions at trial, Washington now contends that "the jury instructions as a whole misstated the law on the First Amendment in this case." We disagree on both points.

We review the district court's instructions to the jury for abuse of discretion. United Fire & Cas. Co. v. Historic Pres. Trust, 265 F.3d 722, 727 (8th Cir. 2001). In conducting this review, we inquire "whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." B & B Hardware, Inc. v. Hargis Indus., Inc., 252 F.3d 1010, 1012 (8th Cir. 2001) (citation omitted).

When analyzing First Amendment retaliation claims by public employees, courts first consider whether the employee's speech was protected. Shands v. City of Kennett, 993 F.2d 1337, 1342 (8th Cir. 1993). This question involves a two-step inquiry. Initially, the court determines whether the employee's speech can be "fairly characterized as constituting speech on a matter of public concern." Id. (quoting Connick v. Myers, 461 U.S. 138, 146 (1983); citing Bausworth v. Hazelwood Sch. Dist., 986 F.2d 1197, 1198 (8th Cir. 1993)). If the speech falls within this category, the court then balances the "interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Id. (alteration in original) (quoting Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)). Although the court should resolve each of these questions as a matter of law, "[a]ny underlying factual disputes concerning whether the plaintiff's speech is protected . . . should be submitted to the jury through special interrogatories or special verdict forms." Id. (citations omitted); see also McGee v. S. Pemiscot Sch. Dist. R-V., 712 F.2d 339, 342 (8th Cir. 1983) (stating that it was for the jury to decide whether the employee's speech created disharmony in the workplace).

The parties agree that Washington's radio comments touched upon matters of public concern. We therefore turn to the second step of the inquiry. In our prior opinion, we noted that "[t]he Pickering balancing test is applicable . . . only if it is first established that the speech in question created a disruption in the workplace." Washington, 272 F.3d at 526 (citations omitted). Washington contends that because

-5-

the defendants presented no evidence at trial as to "actual disharmony in the workplace," they "[were] not entitled to have the jury consider the Pickering balanc[ing] test by way of the jury instructions." The record belies this contention. At trial, several firefighters, including the District's former fire chief, testified that Washington's radio comments created disruption in the workplace, impeded Washington's ability to perform his duties, and impaired his working relationship with other employees. See Kincade v. City of Blue Springs, Mo., 64 F.3d 389, 397 (8th Cir. 1995). Such evidence was sufficient to trigger the Pickering balancing test, and the jury instructions relating to the test were therefore proper.

Turning to the "business judgment" instruction, we have previously indicated that such an instruction may be appropriate in First Amendment retaliation cases, Campbell v. Ark. Dep't of Correction, 155 F.3d 950, 961 (8th Cir. 1998), and we see no reason why it was not appropriate in this case. Furthermore, we fail to see how this instruction would permit the jury to find against Washington, "even if the termination [or demotion] violated the First Amendment." Thus, after reviewing the instructions as a whole, we conclude that the jury was fairly and adequately instructed on Washington's First Amendment claims. See B & B Hardware, Inc., 252 F.3d at 1012.

## B. Exclusion of Witnesses

Washington contends that the district court erred by excluding the testimony of Lizz Brown, Elbert Walton, and Robert Manuel. "We review the district court's evidentiary rulings for an abuse of discretion." Bergfeld v. Unimin Corp., 319 F.3d 350, 355 (8th Cir. 2003) (citation omitted).

Lizz Brown hosted the radio show on which Washington appeared. According to Washington, Brown was "[t]he only person with . . . information regarding the community's reaction" to Washington's comments. As did the district court,

however, we fail to see how this testimony was relevant to the issues at trial. Washington also sought to introduce the testimony of Elbert Walton. Washington states that Walton, an African-American, had supported Robert Lee for a directorship position and would have testified as to "how Bob Lee treated other African American males who supported him." Again, we agree that this testimony was irrelevant and properly excluded.

The trial court also excluded the testimony of Robert Manuel, concluding that, inter alia, his testimony would be cumulative. In an offer of proof, Washington's counsel explained that Manuel was the second African-American hired by the District and was at the fire house after the radio broadcast. Thus, Washington argues, Manuel "could have testified about the firehouse after Mr. Washington's radio [appearance] from the African American perspective." We, however, agree with the district court that "[b]ased on the offer of proof, the proffered testimony would add nothing to what had been admitted." Strong v. Mercantile Trust Co., N.A., 816 F.2d 429, 431-32 (8th Cir. 1987). Accordingly, the district court did not err by excluding Manuel's testimony.

### C. Motion to Dismiss

Washington argues that the district court erred by granting the motion to dismiss filed by John Irwin, Ronald Fritz, Dale Dillingham, and Danny Newberry. In his complaint, Washington alleged that these defendants, along with the other defendants, had conspired to deprive him of his constitutionally protected right to express his opinion on matters of public concern. In their interrogatories, the District and the directors asked Washington to outline the basis for his conspiracy claim. Washington responded that "his complaint and his responses to the motions to dismiss outline the conspiracy, as well as the deposition testimony." Washington later supplemented this response, explaining that members of the District had conspired with Anthony Glover "to get [Washington] terminated." As discussed

-7-

above, Washington's claims against Glover were dismissed on summary judgment, and this dismissal has not been appealed.

During the pre-trial motions hearing, the firefighter defendants moved to dismiss the conspiracy claim against them, arguing that Washington had failed to offer any supporting facts or evidence in response to the defendants' discovery requests. The firefighter defendants also pointed out that Washington had failed to submit a jury instruction on the civil conspiracy count, as the court had directed him to do in its pre-trial order. The district court granted the motion to dismiss, concluding that, based on Washington's discovery responses, the firefighter defendants had done nothing illegal or improper by filing the grievance, reviewing the grievance, or submitting the grievance to the Board.

Washington contends that the motion to dismiss was not filed in accordance with the district court's scheduling order and therefore should have been denied as untimely. "The rules give wide authority and discretion to the district court to manage its caseload." Wisland v. Admiral Beverage Corp., 119 F.3d 733, 737 (8th Cir. 1997) (citations omitted); Fed. R. Civ. P. 16. During the pre-trial motions hearing, the district court acknowledged that the firefighter defendants' motion was late, but was persuaded by their explanation for the delay: "[T]hey wanted to make sure that there were no allegations raised in [Washington's] pretrial compliance, supplemental answers to interrogatories, [or] any other [filing] that might indicate to them . . . what [Washington] is saying that they did to engage in a civil conspiracy." Given Washington's discovery responses, as well as his failure to submit jury instructions relating to the conspiracy claim, the district court acted well within its discretion in granting the firefighter defendants leave to file their motion to dismiss. Wisland, 119 F.3d at 737 (standard of review); see also Fed. R. Civ. P. 16(b) (stating that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge"). Washington advances no other arguments with respect to the motion. Thus,

we cannot find that the district court erred by dismissing the conspiracy claim against the firefighter defendants.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.